**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANAERGIA SERVICES, LLC, a Delaware limited
liability company, and KENT COUNTY BIOENERGY
FACILITY, LLC, a Delaware limited liability company,

        Plaintiffs,

v.

KENT COUNTY, MICHIGAN

        Defendant.

_____/

No.

Hon.

**JURY DEMANDED**

Mark J. Magyar (P75090)
Counsel for Plaintiffs
DYKEMA GOSSETT PLLC
Capitol View, 201 Townsend Street, Suite 900
Lansing, Michigan 48933
(616) 776-7523
mmagyar@dykema.com

**COMPLAINT**

Plaintiffs Anaergia Services, LLC ("Anaergia") and Kent County Bioenergy Facility, LLC ("KCBF") (together, the "Company," or Plaintiffs"), by their attorneys, Dykema Gossett, PLLC, and for their claims against defendant Kent County, Michigan ("Kent County" or the "County"), allege as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. Anaergia is a Delaware limited liability company. None of its members are or have any additional members who are Michigan companies or citizens.

2. KCBF is a Delaware limited liability company. None of its members are or have any additional members who are Michigan companies or citizens.

3. Kent County is a county in the State of Michigan.

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. In addition, Plaintiffs seek a declaratory judgment and such further available relief. 28 U.S.C. §§ 2201, 2202.

5. Venue is proper both because Kent County is where Defendant Kent County is located, and because the parties' subject contract on which this action is based has a forum selection clause requiring that "any legal action between the parties shall be submitted to a court of competent jurisdiction in Kent County, Michigan," which is located within the Western District of Michigan, Southern Division. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 102(b)(1).

## GENERAL ALLEGATIONS

### The Project

6. Kent County issued a Request for Proposals for the Provision of an Innovative Waste Conversion Project for the Sustainable Business Park of Kent County ("RFP4041") and subsequently a Supplemental RFP ("SRFP4041").

7. Plaintiff Anaergia responded to RFP4041 and SRF4041 by proposing to have the Company (owned by Anaergia) develop, design, permit, construct, provide, equip, operate and maintain a facility (the "Facility"), capable of processing municipal solid waste ("MSW") and Single Stream Recyclables ("SSR") from Kent County; and producing marketable products, renewable natural gas ("RNG") / compost and/or recyclable materials (such development, design, construction, equipping, operation and maintenance of the Facility, and related infrastructure, to be collectively hereinafter referred to as the "Project").

2

**The Project Development Agreement**

8. The parties entered a "Project Development Agreement" ("PDA"), on which this action is based. The PDA is attached as **Exhibit 1**.

9. Under the PDA, Kent County desired to have KCBF (owned by Anaergia) undertake the Project at Kent County's Sustainable Business Park located in the southwest quarter of Section 36 of Byron Township, Michigan (Town 5 North, Range 12 West) and/or the West Half of Section 1 of Dorr Township, Michigan (Town 4 North, Range 12 West).

10. Section 1(a) to (b) of the PDA sets forth the non-exhaustive General Project Responsibilities of the parties. Kent County was to, among other things, "work with the Company to obtain permits and to secure potential local support and grants for the Project;" "provide a site ready for development at the Sustainable Business Park (precise acreage to be determined) under a long-term lease for the Project at a nominal rate;" and "secur[e] the financing of that portion of the Project to be owned by the County."

11. Section 2 of the PDA is entitled "Schedule." It sets for various timetables for "a Project schedule detailing milestones from the Commencement Date through the Operation Start Date." The parties agreed that the Schedule was "subject to the County providing or obtaining information as reasonably required by the Company," and that "the timing of such schedule may shift based on timely submittal of pertinent information by County and regulatory agencies." The Schedule was to include all major Project tasks, including those for Project development, design, financing, permitting, construction, startup, testing and shakedown, with their start dates, ending dates and durations, as well as specific Project milestone target dates. This Schedule was to be "[i]n coordination with delivery of the financing plan under Section 6" of the PDA.

12. Under Section 3 of the PDA, Kent County was obligated to "provide the Company with detailed information about the source, transport, composition and quantity projections by day, week and month, of MSW," which the parties acknowledged was necessary "to enable the Company to prepare for the necessary design and to support the financing for the Facility."

13. Under Section 6 of the PDA, KCBF was to "provide the County with a financing plan for the Company's portion of the Project." The financing plan was due "[w]ithin the timeframe allowed per the Schedule to be developed as referenced in Section 2 above." Section 2's Schedule, in turn, as described above, was contingent upon the "County providing or obtaining information as reasonably required by the Company," was to be set "[i]n coordination with delivery of the financing plan under Section 6," and therefore was necessarily subject to "shift based on timely submittal of pertinent information by County and regulatory agencies," per Section 2 of the PDA.

14. Section 8 of the PDA is the "Default" provision. Either party could "default" by failing "to perform any material obligation" under the PDA after the other party provided written notice declaring a Default identifying such failures and there is no cure within 14 days after this notice.

15. Irrespective of any default, Kent County could terminate the PDA "for convenience" under Section 10(a)(i) of the PDA. This means "at the discretion of the [County] for any reason or no reason." (Ex. 1, PDA § 10(c).)

16. If terminating for convenience, the County was obligated to "reimburse the Company for the necessary and reasonable expenses incurred by the Company under this PDA up to a maximum amount of three million four hundred thousand United States Dollars (US$3,400,000)." (Ex. 1. PDA § 11(a).)

4

**Kent County's Invalid Declaration of Default and Plaintiffs' Response**

17. On February 16, 2024, Kent County sent a letter to Anaergia and KCBF invalidly claiming "Material Breach" of the PDA, a copy of which is attached as **Exhibit 2**. Kent County incorrectly contended that the Company failed to provide a timely financing plan as contemplated under Section 6 of the PDA and, therefore, "the project cannot proceed." Kent County incorrectly contended that the financing plan was purportedly due "15 months" from the PDA, or "June 2023" (i.e., eight months before the County declared default).

18. But in the next paragraph of the County's February 16, 2024, letter, the County disclosed its real purpose for terminating the PDA for its own convenience: because of the County's concern about the allegedly "dire" and "bleak" "financial condition" of the Company's "beneficial owner, Anaergia, Inc.," (Ex. 2), and therefore the County's concern about the Company's overall financial wherewithal to complete the Project, even though there had not and has been any material breach.

19. KCBF and Anaergia responded to the County with a letter dated February 28, 2024, a copy of which is attached as **Exhibit 3**. Plaintiffs rejected and denied the County's assertions of default. Plaintiffs established that, contrary to the County's demonstrably false assertion of a "15 month" deadline for the financing plan, the PDA expressly made the financing plan due "[w]ithin the timeframe allowed per the Schedule to be developed as referenced in Section 2 above," and the parties acknowledged that "the timing of such schedule may shift based on timely submittal of pertinent information by County and regulatory agencies." (Ex. 3.) Plaintiffs further established that the County "delayed its tentatively scheduled approvals in August and October of last year, impeding the Company's ability" complete the financing plan. (*Id.*) Plaintiffs therefore considered

5

the County's termination to be one for the County's own convenience under Section 10(a)(i) of the PDA and demanded payment of Plaintiffs' costs pursuant to Section 11(a) of the PDA. (*Id.*)

20.     The County, by counsel from Varnum, responded via letter dated March 21, 2024, a copy of which is attached as **Exhibit 4**. The County clung to its previously asserted position of default, and again referenced its concern about the allegedly "dire financial challenges of the Company's beneficial owner, Anaergia, Inc." (*Id.*) The County did not dispute that it failed to provide the delayed approvals as set forth in Plaintiffs' February 28, 2024 letter, but the County contended that such approvals were not necessary. (*Id.*) The County again confirmed that "**the PDA is terminated**." (*Id.*, emphasis added.)

21.     KCBF and Anaergia again responded via letter dated April 22, 2024, a copy of which is attached as **Exhibit 5**. Plaintiffs again established that it was the County, not Plaintiffs, who were in breach. (Ex. 5.) Plaintiffs further pointed out that the County *approved* the Project in July 2023 – *after* it claims the breach allegedly occurred for purported failure by Plaintiffs to provide the financing plan by an alleged "June 2023" deadline. (*Id.*)

22.     The County again responded via letter dated May 6, 2024, a copy of which is attached as **Exhibit 6**. The opening statements of the County's May 6, 2024, letter asserted that Plaintiffs' counsel's prior letters, Exhibits 3 and 5, purportedly "confirm[ed]" and did not "dispute" the County's assertions of breaches, which is obviously not even a remotely fair reading of the correspondence between the parties and showed that further attempts to engage in resolution discussions with the County would be futile.

23.     Plaintiffs, by counsel, responded with a letter on May 15, 2024, a copy of which is attached as **Exhibit 7**. Plaintiffs stated their belief that, in light of the last correspondence received from the County, further resolution attempts would be futile. (*Id.*) Plaintiffs provided a Statement

6

of Account to the County and demanded payment for the amount due and owing as of March 31, 2024, $2,286,978.17. (*Id.*)

## COUNT I –
## Breach of Contract

24. Plaintiffs repeat and reallege paragraphs 1 through 23 above.

25. The PDA is a lawful and enforceable contract.

26. The PDA is supported by valid consideration.

27. Plaintiffs fully performed all of their duties and obligations under the PDA.

28. Plaintiffs did not substantially or materially breach the PDA at any time. Kent County substantially and materially breached the PDA.

29. A breach is "substantial" if it "has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964).

30. In *Walker & Co v Harrison*, 347 Mich 630, 634-35; 81 NW2d 352 (1957), the Michigan Supreme Court cautioned that a party's unilateral:

> "determination that there has been a material breach, justifying his own repudiation, is fraught with peril, for should such determination, as viewed by a later court in the claim of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim."

31. Kent County's declaration of default was a pretext. Kent County knew that Plaintiffs had not committed any material breach of the PDA, but it wanted out of the deal due to its concerns about Anaergia, Inc.'s financial health. So Kent County invalidly concocted a supposed breach, which was allegedly eight-months old already according to the County by the

time that the County got around to declaring default, at a time that pre-dated the County's July 2023 approval of the Project, so that it could avoid paying Anaergia's costs under the "termination for convenience" Section of the PDA, even though the County was indeed terminating the PDA for its own convenience.

32. Nothing alleged by Kent County constituted any breach by Plaintiffs at all, let alone a "substantial" or "material" breach as necessary to declare a default.

33. Kent County breached the PDA by, at minimum, (a) invalidly declaring Plaintiffs' default when Plaintiffs did not and have not defaulted; (b) refusing to perform or permit Plaintiffs' performance of the PDA, including rendering Plaintiffs' performance impossible by failing to supply information and approvals to Plaintiffs required under the PDA and necessary for Plaintiffs to perform; (c) refusing to pay outstanding sums due and owing to Plaintiffs in the amount of $2,286,978.17 as of March 31, 2024, in breach of Section 11(a) of the PDA; and (d) refusing to acknowledge that its decision to terminate the PDA was for its own convenience pursuant to Section 10(a)(i) of the PDA, not due to any material or substantial breach or default by Plaintiffs.

34. Plaintiffs have suffered money damages in the amount of $2,286,978.17 as of March 31, 2024, plus interest and any available additional damages, such as attorneys' fees and/or costs.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Judgment in their favor against Kent County as follows:

a. $2,286,978.17 as of March 31, 2024 in damages;

b. an award to Plaintiffs of all of their costs and expenses incurred in having to bring this action to enforce the PDA, including Plaintiffs' reasonable attorneys' fees and disbursements and court costs, to the extent awardable under applicable law;

8

  c. any pre- or post-judgment interest to which Plaintiffs may be entitled, including pursuant to MCL § 600.6013(8); and

  d. such further relief or damages to which Plaintiffs may be entitled under applicable law.

## COUNT II –
## Breach of the Covenant of Good Faith and Fair Dealing

35. Plaintiffs repeat and re-allege paragraphs 1 through 34 as though fully stated herein.

36. The covenant of good faith and fair dealing applies to provisions of the PDA over which Kent County had sole discretion. *See Ferrell v. Vic Tanny Int'l, Inc*, 137 Mich. App. 238, 243 (1984); *Burkhardt v. City Nat'l Bank*, 57 Mich. App. 649, 652 (1975); *Dumas v. Auto Club Ins Ass'n*, 437 Mich. 521, 550 n 3 (1991); *31800 Wick Rd Holdings, LLC v. Future Lodging-Airport, Inc.*, 848 F. Supp 2d 757, 766 (E.D. Mich. 2012); *Dupree v. Cranbrook Educ. Cmty.*, No. 10-12094, 2012 U.S. Dist. LEXIS 44395, at *30 (E.D. Mich. Mar. 29, 2012) ("such discretion is not unfettered. It is a well-settled principle of law that such discretion must be exercised in good faith."); *Harp v. Equilon Enters.*, No. 302084, 2012 Mich. App. LEXIS 551, at *18 (Ct. App. Mar. 22, 2012).

37. Kent County had sole discretion under Section 2 of the PDA where the County was obligated to provide or obtain "information as reasonably required by the Company" for the Company to be able to carry out its scheduling responsibilities, including the schedule on which the Company could provide the financing plan described in Section 6 of the PDA.

38. Kent County had sole discretion over whether it "timely submitt[ed] [ ] pertinent information" to Plaintiffs, as necessary "to enable the Company to prepare for the necessary design and to support the financing for the Facility." (*See* Ex. 1, PDA §§ 2, 3, 6.)

9

39. The focus of the obligation of good faith is on how the agreement or other duty is performed or enforced; a breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary. *Ferrell*, 137 Mich App at 243-44; *Gorman v. Am Honda Motor Co, Inc*, 302 Mich. App. 113, 132-136 (2013).

40. The County acted in bad faith. "Bad faith may exist in the absence of dishonesty or fraud." *Maida v. Ret. & Health Servs. Corp.*, Nos. 93-1625, 93-1635, 1994 U.S. App. LEXIS 26583, at *14 (6th Cir. Sep. 19, 1994) (applying Michigan law). The Michigan Supreme Court defined bad faith as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Commercial Union Ins Co v. Liberty Mut Ins Co*, 426 Mich 127, 135 (1986).

41. In bad faith, the County withheld or refused or failed to provide information within its total control and discretion to Plaintiffs that Plaintiffs critically needed as an indispensable component under the PDA to establish the Schedule for the Project under Section 2 of the PDA, including for providing the financing plan under Section 6 of the PDA.

42. The County's bad faith exercise of its discretion rendered performance impossible for Plaintiffs, and resulted in there being **no Schedule** set, let alone a deadline, for the financing plan under Section 6 of the PDA while still awaiting necessary information and approvals from the County, but the County nevertheless declared default by Plaintiffs despite not having provided Plaintiffs with the information and approvals required for Plaintiffs to complete the Schedule and financing plan.

43. Accordingly, the County breached the PDA by breaching the covenant of good faith and fair dealing implied in the PDA, including by exercising total discretion and control over

the information and approvals it was to provide to Plaintiffs as a necessary condition for Plaintiffs to be able to perform, withholding or failing to provide that information, but nevertheless invalidly declaring Plaintiffs' purported default.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Judgment in their favor against Kent County as follows:

a. $2,286,978.17 as of March 31, 2024 in damages;

b. an award to Plaintiffs of all of their costs and expenses incurred in having to bring this action to enforce the PDA, including Plaintiffs' reasonable attorneys' fees and disbursements and court costs, to the extent awardable under applicable law;

c. any pre- or post-judgment interest to which Plaintiffs may be entitled, including pursuant to MCL § 600.6013(8); and

d. such further relief or damages to which Plaintiffs may be entitled under applicable law.

### COUNT III – Account Stated (MCL 600.2145)

44. Plaintiffs repeat and re-allege paragraphs 1 through 43 as though fully stated herein.

45. The balance of Kent County's account due and owing is $2,286,978.17 as of March 31, 2024, as set forth in the affidavit attached hereto as **Exhibit 8**.

46. Kent County has received billings for the amount due, *see* **Ex. 8.A**, but has failed and refused to pay the balance due and owing to Plaintiff.

47. The Account between the parties has become stated.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Judgment in their favor against Kent County as follows:

a. $2,286,978.17 as of March 31, 2024 in damages;

b.an award to Plaintiffs of all of their costs and expenses incurred in having to bring this action to enforce the PDA, including Plaintiffs' reasonable attorneys' fees and disbursements and court costs, to the extent awardable under applicable law;

c.any pre- or post-judgment interest to which Plaintiffs may be entitled, including pursuant to MCL § 600.6013(8); and

d.such further relief or damages to which Plaintiffs may be entitled under applicable law.

## COUNT IV – 
## Declaratory Judgment

48.Plaintiffs repeat and re-allege paragraphs 1 through 47 as though fully stated herein.

49.There is a genuine and bona fide dispute, and an actual controversy and disagreement between Plaintiffs and the County, regarding the County's contention that Plaintiffs committed a material "default" of the PDA by failing to timely provide a "financing plan," which Plaintiffs dispute.

50.Plaintiffs' and the County's interests are directly adverse.

51.Thus, for purposes of a declaratory judgment, the correspondence between the parties, copies of which are attached to this pleading, demonstrate that there is a readily apparent, substantial controversy between the parties, the parties' legal interests are directly adverse, and there is a sufficient immediacy and reality, as the County has already invalidly declared a default and terminated the PDA, to warrant the issuance of a declaratory judgment.

WHEREFORE, Plaintiffs respectfully requests that the Court enter a Declaratory Judgment in Plaintiffs' favor against Kent County as follows:

a.A declaration that Plaintiffs had not materially or substantially breached the PDA when the County declared default;

  b.  A declaration that the County was the first to materially breach the PDA by invalidly declaring default and refusing to pay Plaintiffs' costs after terminating the PDA for the County's own convenience; and

  c.  Such other relief as the Court determines appropriate, 28 U.S.C. § 2202.

## COUNT V –
## Promissory Estoppel

52.  Plaintiffs repeat and re-allege paragraphs 1 through 51 as though fully stated herein.

53.  The County made the promises to Plaintiffs under the PDA knowing that Plaintiffs would necessarily incur costs during performance, as reflected on the Statement of Account attached as Exhibit 7.A, and with the promise that the County would later pay Plaintiffs' costs.

54.  The County should have reasonably expected to induce action by Plaintiffs in making that promise.

55.  Indeed, the County's promise to pay did in fact induce Plaintiffs to provide the services and incur the expenses set forth on the Statement of Account, attached as Exhibit 7.A., to the County.

56.  Injustice can be avoided only by the County's performance of its promise to pay Plaintiffs for the services it provided and costs it incurred in performance of the PDA.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Judgment in their favor against Kent County as follows:

  a.  $2,286,978.17 as of March 31, 2024 in damages;

  b.  an award to Plaintiffs of all of their costs and expenses incurred in having to bring this action to enforce the PDA, including Plaintiffs' reasonable attorneys' fees and disbursements and court costs, to the extent awardable under applicable law;

      c.      any pre- or post-judgment interest to which Plaintiffs may be entitled, including pursuant to MCL § 600.6013(8); and

      d.      such further relief or damages to which Plaintiffs may be entitled under applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court enter judgment in their favor and against Kent County, and award Plaintiffs the following relief:

      a.      $2,286,978.17 as of March 31, 2024, in damages;

      b.      an award to Plaintiff of all of their costs and expenses incurred in having to bring this action to enforce the PDA, including Plaintiffs' reasonable attorneys' fees and disbursements and court costs, to the extent awardable under applicable law;

      c.      any pre- or post-judgment interest to which Plaintiffs may be entitled, including pursuant to MCL § 600.6013(8);

      d.      a declaration that Plaintiffs had not materially or substantially breached the PDA when Defendant declared default, whereas Defendant was the first to materially breach the PDA by invalidly declaring default and refusing to pay Plaintiffs' costs after Defendant's termination of the PDA for convenience; and

      e.      such further relief or damages to which Plaintiffs may be entitled under applicable law.

Dated: May 16, 2024          By: /s/ *Mark J. Magyar*
                                   Mark J. Magyar (P75090)
                                   Attorneys for Plaintiff
                                   DYKEMA GOSSETT PLLC
                                   Capitol View, 201 Townsend Street, Suite 900
                                   Lansing, Michigan 48933
                                   Telephone: (517) 374-9100
                                   MMagyar@dykema.com