IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANAERGIA SERVICES, LLC; and KENT COUNTY BIOENERGY FACILITY, LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>KENT COUNTY, MICHIGAN<br><br>                Defendant. | Case No. 1:24-cv-514<br><br>Hon. Hala Y. Jarbou |

## DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Kent County, Michigan, by and through its attorneys, Varnum LLP, answers Plaintiffs' First Amended Complaint as follows:

## PARTIES, VENUE, AND JURISDICTION

1.      This FAC is filed to allege additional jurisdictional facts regarding the citizenship of Plaintiffs' members in paragraphs 2 and 3 below pursuant to the Court's Order to Show Cause dated May 17, 2024. (RE 5.) This FAC is otherwise materially unchanged from the original complaint filed on May 16, 2024.

**ANSWER:  The allegations in this paragraph are neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to their truth.**

2.      Plaintiff Anaergia is a Delaware limited liability company. Anaergia's sole member is UTS Bioenergy Holdings, LLC, which is a Delaware limited liability company. UTS Bioenergy Holdings, LLC's sole member is Anaergia US Corp., which is a Canadian corporation,

incorporated in Ontario, Canada and having its principal place of business at 4210 South Service Road, Burlington, Ontario L7L 4X5 Canada.

**ANSWER:   The allegations in this paragraph are neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to their truth.**

3.      Plaintiff KCBF is a Delaware limited liability company. KCBF's sole member is Kent County Bioenergy Facility Holdco, LLC, which is a Delaware limited liability company. Kent County Bioenergy Facility Holdco, LLC's sole member is Plaintiff Anaergia Services, LLC, whose citizenship is set forth above in paragraph 2 of this pleading, and who is a citizen of Delaware and Ontario, Canada.

**ANSWER:   The allegations in this paragraph are neither admitted nor denied as Defendant is without knowledge or information sufficient to form a belief as to their truth.**

4.      Kent County is a county in the State of Michigan.

**ANSWER:   Admitted.**

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different States. Plaintiffs Anaergia and KCBF are each citizens of Delaware and Ontario, Canada for purposes of diversity jurisdiction, whereas Kent County is a citizen of Michigan. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as Plaintiffs seek damages of $2,286,978.17 through March 31, 2024.

**ANSWER:   The allegation in this paragraph states a legal conclusion to which no response is required.  By way of further response, Defendant denies that any damages are owed to Plaintiffs.**

6.      Venue is proper both because Kent County is where Defendant Kent County is located, and because the parties' subject contract on which this action is based has a forum

2

selection clause requiring that "any legal action between the parties shall be submitted to a court of competent jurisdiction in Kent County, Michigan," which is located within the Western District of Michigan, Southern Division. *See* 28 U.S.C. § 1391(b)(2); 28 U.S.C. § 102(b)(1).

**ANSWER:    The allegation in this paragraph states a legal conclusion to which no response is required.**

## GENERAL ALLEGATIONS

7.    Kent County issued a Request for Proposals for the Provision of an Innovative Waste Conversion Project for the Sustainable Business Park of Kent County ("RFP4041") and subsequently a Supplemental RFP ("SRFP4041").

**ANSWER:    The allegations in this paragraph reference specific documents that speak for themselves and to which no response is required.  By way of further response, Kent County admits that proposals were requested in connection with a potential sustainable business park and potential waste conversion project.**

8.    Plaintiff Anaergia responded to RFP4041 and SRF4041 by proposing to have the Company (owned by Anaergia) develop, design, permit, construct, provide, equip, operate and maintain a facility (the "Facility"), capable of processing municipal solid waste ("MSW") and Single Stream Recyclables ("SSR") from Kent County; and producing marketable products, renewable natural gas ("RNG") / compost and/or recyclable materials (such development, design, construction, equipping, operation and maintenance of the Facility, and related infrastructure, to be collectively hereinafter referred to as the "Project").

**ANSWER:    The allegations in this paragraph purport to quote in part the second "Whereas clause" in the Project Development Agreement, which speaks for itself.  By way**

of further response, Plaintiffs inaccurately quote the second paragraph of the PDA, and to that extent the allegations in this paragraph are denied.

9.      The parties entered a "Project Development Agreement" ("PDA"), on which this action is based. The PDA is attached to the original complaint, (**RE 1-1**), and incorporated herein.

**ANSWER:    It is admitted only that Kent County and the Kent County Bioenergy Facility entered into the PDA, a document which speaks for itself.  Any remaining allegations in this paragraph are denied.**

10.      Under the PDA, Kent County desired to have KCBF (owned by Anaergia) undertake the Project at Kent County's Sustainable Business Park located in the southwest quarter of Section 36 of Byron Township, Michigan (Town 5 North, Range 12 West) and/or the West Half of Section 1 of Dorr Township, Michigan (Town 4 North, Range 12 West).

**ANSWER:    The allegations in this paragraph purport to quote from the third "Whereas clause" of the PDA, a document which speaks for itself.  To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.**

11.      Section 1(a) to (b) of the PDA sets forth the non-exhaustive General Project Responsibilities of the parties. Kent County was to, among other things, "work with the Company to obtain permits and to secure potential local support and grants for the Project;" "provide a site ready for development at the Sustainable Business Park (precise acreage to be determined) under a long-term lease for the Project at a nominal rate;" and "secur[e] the financing of that portion of the Project to be owned by the County."

**ANSWER:    The allegations in this paragraph reference and quote from the PDA, a document which speaks for itself.  To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.**

4

12.     Section 2 of the PDA is entitled "Schedule." It sets for various timetables for "a Project schedule detailing milestones from the Commencement Date through the Operation Start Date." The parties agreed that the Schedule was "subject to the County providing or obtaining information as reasonably required by the Company," and that "the timing of such schedule may shift based on timely submittal of pertinent information by County and regulatory agencies." The Schedule was to include all major Project tasks, including those for Project development, design, financing, permitting, construction, startup, testing and shakedown, with their start dates, ending dates and durations, as well as specific Project milestone target dates. This Schedule was to be "[i]n coordination with delivery of the financing plan under Section 6" of the PDA.

**ANSWER:    The allegations in this paragraph reference and quote in part the PDA, a document which speaks for itself.  To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.  By way of further response, Plaintiffs materially breached the PDA by failing to perform their obligations and failing to cure the default after notice was provided.**

13.     Under Section 3 of the PDA, Kent County was obligated to "provide the Company with detailed information about the source, transport, composition and quantity projections by day, week and month, of MSW," which the parties acknowledged was necessary "to enable the Company to prepare for the necessary design and to support the financing for the Facility."

**ANSWER:    The allegations in this paragraph purport to reference and quote in part from the PDA, a document which speaks for itself.  To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.**

14.     Under Section 6 of the PDA, KCBF was to "provide the County with a financing plan for the Company's portion of the Project." The financing plan was due "[w]ithin the

5

timeframe allowed per the Schedule to be developed as referenced in Section 2 above." Section 2's Schedule, in turn, as described above, was contingent upon the "County providing or obtaining information as reasonably required by the Company," was to be set "[i]n coordination with delivery of the financing plan under Section 6," and therefore was necessarily subject to "shift based on timely submittal of pertinent information by County and regulatory agencies," per Section 2 of the PDA.

**ANSWER:   The allegations in this paragraph reference and quote from the PDA, a document which speaks for itself.   To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.   By way of further response, Plaintiffs materially breached the PDA by failing to perform their obligations and failing to cure the default after notice was provided.**

15.   Section 8 of the PDA is the "Default" provision. Either party could "default" by failing "to perform any material obligation" under the PDA after the other party provided written notice declaring a Default identifying such failures and there is no cure within 14 days after this notice.

**ANSWER:   The allegations in this paragraph reference and quote from the PDA, a document which speaks for itself.   To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.   By way of further response, Plaintiffs materially breached the PDA by failing to perform their obligations and failing to cure the default after notice was provided.**

16.   Irrespective of any default, Kent County could terminate the PDA "for convenience" under Section 10(a)(i) of the PDA. This means "at the discretion of the [County] for any reason or no reason." (RE 1-1, PDA § 10(c).)

**ANSWER:   The allegations in this paragraph reference and quote from the PDA, a document which speaks for itself.   To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.   By way of further response, Plaintiffs materially breached the PDA by failing to perform their obligations and failing to cure the default after notice was provided.**

17.     If terminating for convenience, the County was obligated to "reimburse the Company for the necessary and reasonable expenses incurred by the Company under this PDA up to a maximum amount of three million four hundred thousand United States Dollars (US$3,400,000)." (RE 1-1, PDA § 11(a).)

**ANSWER:   The allegations in this paragraph reference and quote from the PDA, a document which speaks for itself.   To the extent the allegations in this paragraph are inconsistent with or misrepresent the PDA, they are denied.   By way of further response, Plaintiffs materially breached the PDA by failing to perform their obligations and failing to cure the default after notice was provided.**

18.     On February 16, 2024, Kent County sent a letter to Anaergia and KCBF invalidly claiming "Material Breach" of the PDA, a copy of which is attached to the original complaint, (**RE 1-2**), and incorporated herein. Kent County incorrectly contended that the Company failed to provide a timely financing plan as contemplated under Section 6 of the PDA and, therefore, "the project cannot proceed." Kent County incorrectly contended that the financing plan was purportedly due "15 months" from the PDA, or "June 2023" (i.e., eight months before the County declared default).

**ANSWER:   Denied.**

19.     But in the next paragraph of the County's February 16, 2024, letter, the County disclosed its real purpose for terminating the PDA for its own convenience: because of the County's concern about the allegedly "dire" and "bleak" "financial condition" of the Company's "beneficial owner, Anaergia, Inc.," (RE 1-2), and therefore the County's concern about the Company's overall financial wherewithal to complete the Project, even though there had not and has not been any material breach.

**ANSWER:     Denied.**

20.     KCBF and Anaergia responded to the County with a letter dated February 28, 2024, a copy of which is attached to the original complaint, (**RE 1-3**), and incorporated herein. Plaintiffs rejected and denied the County's assertions of default. Plaintiffs established that, contrary to the County's demonstrably false assertion of a "15 month" deadline for the financing plan, the PDA expressly made the financing plan due "[w]ithin the timeframe allowed per the Schedule to be developed as referenced in Section 2 above," and the parties acknowledged that "the timing of such schedule may shift based on timely submittal of pertinent information by County and regulatory agencies." (RE 1-3.) Plaintiffs further established that the County "delayed its tentatively scheduled approvals in August and October of last year, impeding the Company's ability" to complete the financing plan. (Id.) Plaintiffs therefore considered the County's termination to be one for the County's own convenience under Section 10(a)(i) of the PDA and demanded payment of Plaintiffs' costs pursuant to Section 11(a) of the PDA. (Id.)

**ANSWER:     Denied.**

21.     The County, by counsel from Varnum, responded via letter dated March 21, 2024, a copy of which is attached to the original complaint, (**RE 1-4**), and incorporated herein. The County clung to its previously asserted position of default, and again referenced its concern about the

allegedly "dire financial challenges of the Company's beneficial owner, Anaergia, Inc." (Id.) The County did not dispute that it failed to provide the delayed approvals as set forth in Plaintiffs' February 28, 2024 letter, but the County contended that such approvals were not necessary. (Id.) The County again confirmed that "**the PDA is terminated**." (Id., emphasis added.)

**ANSWER:    Denied.**

22.    KCBF and Anaergia again responded via letter dated April 22, 2024, a copy of which is attached to the original complaint, (**RE 1-5**), and incorporated herein. Plaintiffs again established that it was the County, not Plaintiffs, who were in breach. (RE 1-5.) Plaintiffs further pointed out that the County **approved** the Project in July 2023 – **after** it claims the breach allegedly occurred for purported failure by Plaintiffs to provide the financing plan by an alleged "June 2023" deadline. (*Id.*)

**ANSWER:    Denied.**

23.    The County again responded via letter dated May 6, 2024, a copy of which is attached to the original complaint, (**RE 1-6**), and incorporated herein. The opening statements of the County's May 6, 2024, letter asserted that Plaintiffs' counsel's prior letters, (RE 1-3 and RE 1-5), purportedly "confirm[ed]" and did not "dispute" the County's assertions of breaches, which is obviously not even a remotely fair reading of the correspondence between the parties and showed that further attempts to engage in resolution discussions with the County would be futile.

**ANSWER:    Denied.**

24.    Plaintiffs, by counsel, responded with a letter on May 15, 2024, a copy of which is attached to the original complaint, (**RE 1-7**), and incorporated herein. Plaintiffs stated their belief that, in light of the last correspondence received from the County, further resolution attempts

would be futile. (Id.) Plaintiffs provided a Statement of Account to the County and demanded payment for the amount due and owing as of March 31, 2024, $2,286,978.17. (Id.)

**ANSWER:    Denied.**

## COUNT I –
## Breach of Contract

25.    Plaintiffs repeat and reallege paragraphs 1 through 24 above.

**ANSWER:    Defendant reasserts its responses to the foregoing paragraphs as if fully set forth herein.**

26.    The PDA is a lawful and enforceable contract.

**ANSWER:    The allegation in this paragraph states a legal conclusion to which no response is required.**

27.    The PDA is supported by valid consideration.

**ANSWER:    The allegation in this paragraph states a legal conclusion to which no response is required.**

28.    Plaintiffs fully performed all of their duties and obligations under the PDA.

**ANSWER:    Denied.**

29.    Plaintiffs did not substantially or materially breach the PDA at any time. Kent County substantially and materially breached the PDA.

**ANSWER:    Denied.**

30.    A breach is "substantial" if it "has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 573; 127 NW2d 340 (1964).

**ANSWER:    The allegation in this paragraph purports to articulate a legal principle to which no response is required.  By way of further response, Plaintiffs materially breached the PDA and failed to cure their default after notice of default was provided.**

31.    In *Walker & Co v Harrison*, 347 Mich 630, 634-35; 81 NW2d 352 (1957), the Michigan Supreme Court cautioned that a party's unilateral:

> "determination that there has been a material breach, justifying his own repudiation, is fraught with peril, for should such determination, as viewed by a later court in the claim of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim."

**ANSWER:    Plaintiff purports to articulate a legal principle, to which no response is required.  By way of further response, Plaintiffs breached the PDA and failed to cure their default after being provided an opportunity to do so.**

32.    Kent County's declaration of default was a pretext. Kent County knew that Plaintiffs had not committed any material breach of the PDA, but it wanted out of the deal due to its concerns about Anaergia, Inc.'s financial health. So Kent County invalidly concocted a supposed breach, which was allegedly eight-months old already according to the County by the time that the County got around to declaring default, at a time that pre-dated the County's July 2023 approval of the Project, so that it could avoid paying Anaergia's costs under the "termination for convenience" Section of the PDA, even though the County was indeed terminating the PDA for its own convenience.

**ANSWER:    Denied.**

33.    Nothing alleged by Kent County constituted any breach by Plaintiffs at all, let alone a "substantial" or "material" breach as necessary to declare a default.

**ANSWER:    Denied.**

34.     Kent County breached the PDA by, at minimum, (a) invalidly declaring Plaintiffs'
default when Plaintiffs did not and have not defaulted; (b) refusing to perform or permit Plaintiffs'
performance of the PDA, including rendering Plaintiffs' performance impossible by failing to supply
information and approvals to Plaintiffs required under the PDA and necessary for Plaintiffs to
perform; (c) refusing to pay outstanding sums due and owing to Plaintiffs in the amount of
$2,286,978.17 as of March 31, 2024, in breach of Section 11(a) of the PDA; and (d) refusing to
acknowledge that its decision to terminate the PDA was for its own convenience pursuant to Section
10(a)(i) of the PDA, not due to any material or substantial breach or default by Plaintiffs.

**ANSWER:   Denied.**

35.     Plaintiffs have suffered money damages in the amount of $2,286,978.17 as of
March 31, 2024, plus interest and any available additional damages, such as attorneys' fees and/or
costs.

**ANSWER:   Denied.**

**WHEREFORE, Defendant respectfully requests that this Court enter a judgment in
its favor and against Plaintiffs, dismissing this claim with prejudice, awarding Defendant
attorneys' fees and all other relief as appropriate.**

### COUNT II –
### Breach of the Covenant of Good Faith and Fair Dealing

36.     Plaintiffs repeat and re-allege paragraphs 1 through 35 as though fully stated herein.

**ANSWER:   Defendant reasserts its responses to the foregoing paragraphs as if fully set
forth herein.**

37.     The covenant of good faith and fair dealing applies to provisions of the PDA over
which Kent County had sole discretion. *See Ferrell v. Vic Tanny Int'l, Inc*, 137 Mich. App. 238, 243
(1984); *Burkhardt v. City Nat'l Bank*, 57 Mich. App. 649, 652 (1975); *Dumas v. Auto Club Ins Ass'n*,

437 Mich. 521, 550 n 3 (1991); *31800 Wick Rd Holdings, LLC v. Future Lodging-Airport, Inc.*, 848 F. Supp 2d 757, 766 (E.D. Mich. 2012); *Dupree v. Cranbrook Educ. Cmty.*, No. 10-12094, 2012 U.S. Dist. LEXIS 44395, at *30 (E.D. Mich. Mar. 29, 2012) ("such discretion is not unfettered. It is a well-settled principle of law that such discretion must be exercised in good faith."); *Harp v. Equilon Enters.*, No. 302084, 2012 Mich. App. LEXIS 551, at *18 (Ct. App. Mar. 22, 2012).

**ANSWER:    This paragraph purports to articulate a legal principle to which no response is required.  By way of further response, Defendant denies any breach of any purported covenant of good faith and fair dealing.**

38.    Kent County had sole discretion under Section 2 of the PDA where the County was obligated to provide or obtain "information as reasonably required by the Company" for the Company to be able to carry out its scheduling responsibilities, including the schedule on which the Company could provide the financing plan described in Section 6 of the PDA.

**ANSWER:    Denied.**

39.    Kent County had sole discretion over whether it "timely submitt[ed] [ ] pertinent information" to Plaintiffs, as necessary "to enable the Company to prepare for the necessary design and to support the financing for the Facility." (*See* RE 1-1, PDA §§ 2, 3, 6.)

**ANSWER:    Denied.**

40.    The focus of the obligation of good faith is on how the agreement or other duty is performed or enforced; a breach of contract may be found where bad faith or unfair dealing exists in the performance of a contractual term when the manner of performance was discretionary. *Ferrell*, 137 Mich App at 243-44; *Gorman v. Am Honda Motor Co, Inc*, 302 Mich. App. 113, 132-136 (2013).

**ANSWER:    The allegation in this paragraph purports to articulate a legal principle to which no response is required.  By way of further response, the allegation is denied.**

41.    The County acted in bad faith. "Bad faith may exist in the absence of dishonesty or fraud." *Maida v. Ret. & Health Servs. Corp.*, Nos. 93-1625, 93-1635, 1994 U.S. App. LEXIS 26583, at *14 (6th Cir. Sep. 19, 1994) (applying Michigan law). The Michigan Supreme Court defined bad faith as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Commercial Union Ins Co v. Liberty Mut Ins Co*, 426 Mich 127, 135 (1986).

**ANSWER:    Denied.**

42.    In bad faith, the County withheld or refused or failed to provide information within its total control and discretion to Plaintiffs that Plaintiffs critically needed as an indispensable component under the PDA to establish the Schedule for the Project under Section 2 of the PDA, including for providing the financing plan under Section 6 of the PDA.

**ANSWER:    Denied.**

43.    The County's bad faith exercise of its discretion rendered performance impossible for Plaintiffs, and resulted in there being *no Schedule* set, let alone a deadline, for the financing plan under Section 6 of the PDA while still awaiting necessary information and approvals from the County, but the County nevertheless declared default by Plaintiffs despite not having provided Plaintiffs with the information and approvals required for Plaintiffs to complete the Schedule and financing plan.

**ANSWER:    Denied.**

44.    Accordingly, the County breached the PDA by breaching the covenant of good faith and fair dealing implied in the PDA, including by exercising total discretion and control over the information and approvals it was to provide to Plaintiffs as a necessary condition for Plaintiffs to

be able to perform, withholding or failing to provide that information, but nevertheless invalidly declaring Plaintiffs' purported default.

**ANSWER:    Denied.**

**WHEREFORE, Defendant respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, dismissing this claim with prejudice, awarding Defendant attorney's fees and all other relief as appropriate.**

**COUNT III –**
**Account Stated (MCL 600.2145)**

45.     Plaintiffs repeat and re-allege paragraphs 1 through 44 as though fully stated herein.

**ANSWER:    Defendant reasserts its responses to the foregoing paragraphs as if fully set forth herein.**

46.     The balance of Kent County's account due and owing is $2,286,978.17 as of March 31, 2024, as set forth in the affidavit attached to the original complaint, (**RE 1-8**), and incorporated herein.

**ANSWER:    Denied.**

47.     Kent County has received billings for the amount due, *see* RE 1-7, PageID.47-50; RE 1-8, PageID.56-59, but has failed and refused to pay the balance due and owing to Plaintiff.

**ANSWER:    Denied.**

48.     The Account between the parties has become stated.

**ANSWER:    Denied.**

**WHEREFORE, Defendant respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, dismissing this claim with prejudice, awarding Defendant attorney's fees and all other relief as appropriate.**

**COUNT IV –**
**Declaratory Judgment**

49.     Plaintiffs repeat and re-allege paragraphs 1 through 48 as though fully stated herein.

**ANSWER:     Defendant reasserts its responses to the foregoing paragraphs as if fully set forth herein.**

50.     There is a genuine and bona fide dispute, and an actual controversy and disagreement between Plaintiffs and the County, regarding the County's contention that Plaintiffs committed a material "default" of the PDA by failing to timely provide a "financing plan," which Plaintiffs dispute.

**ANSWER:     Denied.**

51.     Plaintiffs' and the County's interests are directly adverse.

**ANSWER:     Denied.**

52.     Thus, for purposes of a declaratory judgment, the correspondence between the parties, copies of which are attached to this pleading, demonstrate that there is a readily apparent, substantial controversy between the parties, the parties' legal interests are directly adverse, and there is a sufficient immediacy and reality, as the County has already invalidly declared a default and terminated the PDA, to warrant the issuance of a declaratory judgment.

**ANSWER:     Denied.**

**WHEREFORE, Defendant respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, dismissing this claim with prejudice, awarding Defendant attorney's fees and all other relief as appropriate.**

**COUNT V –**
**Promissory Estoppel**

53.     Plaintiffs repeat and re-allege paragraphs 1 through 52 as though fully stated herein.

**ANSWER:**    **Defendant reasserts its responses to the foregoing paragraphs as if fully set forth herein.**

54.     The County made the promises to Plaintiffs under the PDA knowing that Plaintiffs would necessarily incur costs during performance, as reflected on the Statement of Account, RE 1-7; RE 1-8, and with the promise that the County would later pay Plaintiffs' costs.

**ANSWER:**    **Denied.**

55.     The County should have reasonably expected to induce action by Plaintiffs in making that promise.

**ANSWER:**    **Denied.**

56.     Indeed, the County's promise to pay did in fact induce Plaintiffs to provide the services and incur the expenses set forth on the Statement of Account, RE 1-7; RE 1-8, to the County.

**ANSWER:**    **Denied.**

57.     Injustice can be avoided only by the County's performance of its promise to pay Plaintiffs for the services it provided and costs it incurred in performance of the PDA.

**ANSWER:**    **Denied.**

**WHEREFORE, Defendant respectfully requests that this Court enter a judgment in its favor and against Plaintiffs, dismissing this claim with prejudice, awarding Defendant attorney's fees and all other relief as appropriate.**

17

Respectfully submitted,
VARNUM LLP
Attorneys for Defendant

Dated:  August 15, 2024                    By: /s/Gary J. Mouw

Gary J. Mouw (P69236)
Neil E. Youngdahl (P82452)
333 Bridge Street, N.W., Suite 1700
Grand Rapids, MI 49504
(616) 336-6000
gjmouw@varnumlaw.com
neyoungdahl@varnumlaw.com

18

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

Defendant Kent County, Michigan, by its attorneys, Varnum LLP, asserts the following affirmative defenses:

1.      Plaintiffs have failed to state a claim upon which relief can be granted.

2.      Plaintiffs have not suffered any damages.

3.      Plaintiffs have failed to mitigate their claimed damages.

4.      Plaintiffs committed the first material breach of the parties' contract.

5.      Plaintiffs' claims are barred by their own failure to perform.

6.      Plaintiffs' actions or inactions frustrated the purpose of the parties' agreement.

7.      Plaintiffs' actions or inactions made Defendant's performance under the parties' agreement impracticable and/or impossible.

8.      Plaintiffs may have fraudulently induced Defendant to enter into the parties' agreement.

9.      Plaintiffs failed to disclose material facts to Defendant prior to the parties' entering into their agreement.

10.      Plaintiffs' claims are barred in whole or in part by a mutual or unilateral mistake of fact.

11.      Plaintiffs' claims may be barred by failure to satisfy a condition precedent.

12.      All or part of the damages sought by Plaintiffs may not be recoverable under the applicable law.

13.      If Plaintiffs suffered or sustained any loss, injury, damage or detriment, it was directly and proximately caused and contributed to by the breach, conduct, acts, omissions, activities, carelessness, recklessness, negligence, or intentional misconduct of others including but

not limited to Plaintiffs, and not by Defendant.

14.     Plaintiffs are barred from obtaining the relief sought by the doctrines of consent, estoppel, waiver, unclean hands, laches or other equitable doctrines.

15.     Defendant has at all times complied with its contractual rights and obligations.

16.     Defendant has acted at all times in good faith.

17.     Plaintiffs' claims are barred by the express language of the parties' agreement.

18.     Defendant was entitled to terminate the contract, in the alternative, because of the material cost increase of the project.

19.     Plaintiffs' claims may be barred by the doctrines of res judicata or collateral estoppel.

20.     Defendant reserves the right to add additional affirmative defenses as they become known, through discovery or otherwise.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendant

Dated:  August 15, 2024           By: /s/Gary J. Mouw _____
                                        Gary J. Mouw (P69236)
                                        Neil E. Youngdahl (P82452)
                                        333 Bridge Street, N.W., Suite 1700
                                        Grand Rapids, MI 49504
                                        (616) 336-6000
                                        gjmouw@varnumlaw.com
                                        neyoungdahl@varnumlaw.com

26053432.1